IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, by and through its DIVISION OF FORESTRY, FIRE AND STATE LANDS, <br><br>          **Plaintiff,** <br><br> vs. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF THE INTERIOR; BUREAU OF RECLAMATION; ELUID MARTINEZ, in his official capacity as Commissioner; BUREAU OF LAND MANAGEMENT; SALLY WISELY, in her capacity as Utah State Director, BLM; RICHARD W. DAVIS; JOHN DOE and MARY DOE; et al., <br><br>          **Defendants.** | **MEMORANDUM OPINION AND ORDER** <br><br> Case No. 2:97CV927K |

This matter is before the court on the State of Utah's Motion for Partial Summary Judgment against Powell Slough Landowner Defendants, the Clinger Family Partnership's Motion for Partial Summary Judgment, the Clinger Family Partnership's Motion to Strike Portions of Ratcliffe Affidavit, the State's Motion to Strike Clingers' Summary Judgment Motion as Untimely, and the United States' Motion for Partial Summary Judgment Against Landowner Defendants.  The court held a  hearing on the motions on July 21, 2005.  At the hearing, the State was represented by J. Mark Ward and Michael S. Johnson, the Defendants referred to as the

Landowner Defendants were represented by Robert C. Fillerup, Defendant Clinger Family Partnership was represented by M. Dayle Jeffs, and the United States was represented by James E. Karkut. Oral argument was heard and the parties' motions were taken under advisement.  Since the hearing, the court has carefully considered all pleadings, memoranda, and other materials submitted by the parties.  The court has further considered the law and facts relevant to the parties' motions and, now being fully advised, enters the following Memorandum Opinion and Order.

## BACKGROUND

This court has been called upon to determine the location of the boundary between state-owned lands and privately-owned lands surrounding Utah Lake.  The court has previously recognized that Utah Lake is a navigable lake and, as such, ownership below the lake's ordinary high water mark automatically transferred to the State of Utah pursuant to the equal footing doctrine on the date of Utah's statehood.  *See Utah v. United States*, 482 U.S. 193 (1987). However, due to several factors, the ordinary high water mark of Utah Lake on the date of statehood was obliterated.  Therefore, the court adopted the reasoning of the Utah Supreme Court in the *Jacobsen v. Provo City* cases and quieted title in the landowners in possession of the land who could demonstrate evidence of historical title, use, and possession at the time of statehood. *See Provo City v. Jacobsen*, 217 P.2d 577, 579 (Utah 1950); *Provo City v. Jacobsen*, 181 P.2d 213, 214-15 (Utah 1947); *Provo City v. Jacobsen*, 176 P.2d 130 (Utah 1947).  Because of a Stipulation later entered into by the parties, known as the 4481 Stipulation, the State now bears the burden of demonstrating that the landowners did not use and possess the land down to the 4481 elevation at the time of statehood.  The factual determination of the proper location of the boundary for each disputed parcel in the non-Powell Slough area of the lake has been referred to,

and is presently before, a Special Master appointed by this court.

The court's previous opinion regarding the boundary issues related to all areas of the Lake with the exception of the Powell Slough area, which the parties agreed to address separately. The present motions before the court relate to boundary issues in the Powell Slough area. The State acknowledges that the court's previous legal decision regarding the test to apply in determining the proper boundary applies equally to the Powell Slough area. The State also acknowledges that the 4481 Stipulation entered into by the parties is applicable to the Powell Slough area. Therefore, the proper lake boundary is that which existed at the time of statehood based on evidence of title, use, and possession at the time of statehood. And, based on the 4481 Stipulation, there is a rebuttable presumption that at the time of statehood the landowners used and possessed the lands below their patented properties down to the 4481 elevation. However, the State may present statehood-era evidence at trial to rebut the 4481 presumption and prove that the lowest extent of the statehood title, use, and possession is higher than the 4481 elevation.

## DISCUSSION

### The State's Motion for Partial Summary Judgment Against Powell Slough Landowners and the Clinger Family Partnership's Motion for Summary Judgment

The State originally brought its Motion for Partial Summary Judgment against twelve landowner defendants in the Powell Slough. However, the State has settled with all of the landowner defendants in the Powell Slough except the Clinger Family Partnership ("Clingers"). The Clingers filed a cross Motion for Partial Summary Judgment in response to the State's Motion for Partial Summary Judgment.

The State filed a motion to strike the Clingers' motion as untimely because it was filed after the deadline for motions for summary judgment relating to the Powell Slough portion of the

case.  Although the Clingers' motion did not meet that deadline, the parties have had an adequate opportunity to brief the issues and the court finds no prejudice to the State in determining the motion.  Therefore, the court denies the State's motion to strike the Clingers' motion for summary judgment and will consider both the State's and the Clingers' motion together.

The State's motion focuses on the title element of the "title, use, and possession" test set out in the court's prior order.  The State argues that before proceeding to a trial on the boundary issues under the use and possession part of the test, the court can resolve, as a matter of law, that the Clingers did not have title to land abutting the lake bed at the time of statehood.  Specifically, the State argues that the Clingers' predecessors did not obtain patents to lake-abutting parcels, but instead, only obtained patents to lands that were separated from the lake by other government lands below their patented parcels–lands that were surveyed, platted, and offered for sale before the upland patent was issued to the Clingers' predecessor.

The Powell Slough was surveyed in 1856 and re-surveyed in 1874.  Government meander lines were drawn for both years.  The 1875 meander line is lower than the 1856 meander line. Therefore, in 1875, the Government Land Office issued a new plat map ("1875 GLO Plat") showing both meander lines and creating additional government lots situated entirely below the upper meander line ("1875 Lands").  Only three federal patents were issued in the Powell Slough for parcels below the upper meander line and the owners of those parcels have settled with the State.  All other parcels surveyed below the upper meander line remain un-patented.

In 1881, the Clingers' patent was issued to James Clinger for a parcel above the 1856 Meander Line (Lot 2 Section 29) after the 1875 Lands were included in the 1875 GLO Plat. Accordingly, the Clingers parcel was separated from the lake by the 1875 Lands.  None of the Clingers' predecessors complained of or challenged the GLO's creation of the 1875 Lands that

separated Lot 2 of Section 29 from the lake.  Therefore, the Clingers' parcel does not run back to a federal root patent that describes land below the upper meander line.

A deed, patent, or other conveyance of real property only affects and transfers title to the lands described in the instrument.  The scope of conveyance is controlled by the intent of the grantor as reflected in the terms of the conveyance document.  *Hansen v. Stichting Mayflower Rec. Fonds*, 898 F. Supp. 1503, 1515 (D. Utah 1995).  Although a federal patent that uses a meander line abutting a body of water conveys to the water's edge, not all meander lines abut a body of water or confer an interest to the water's edge.  A patent to an old meander line carries no title to the water's edge if the United States no longer regards the patented parcel to be abutting the controlling meander line at the time the parcel is patented.

In *Koch v. United States*, 47 F.3d 1015 (10th Cir. 1995), the Tenth Circuit noted that "the government's intention controls the disposition of land granted by government patent."  Also, in *Albrecht v. United States*, the Tenth Circuit recognized that "in a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign rather than the grantee."  831 F.2d 196, 198 (10th Cir. 1987).  "[I]f the patents referred to an official plat . . . the plat is to be treated as part of the conveyance."  *Id.*

In this case, the 1875 meander line and the 1875 Lands were created before the Clingers' patent was issued using the 1856 meander line.  Because the government re-surveyed the area and created the 1875 GLO Plat including additional parcels within the 1875 lands, it is clear that the government did not intend a patent issued after 1875 using the 1856 meander line as a boundary to convey land to the water's edge.  In 1881, when the Clingers' patent was issued, the government would not have regarded the 1856 meander line as the lakeside meander line because the 1875

meander line created parcels between the 1875 meander line and the 1856 meander line.

Moreover, there would be no intent to include the 1875 Lands in the patent if the 1856 meander line was used as the boundary. The Clingers' patent did not describe or purport to affect the 1875 Lands. Instead, the patent expressly declared that the description of the lots conveyed were issued according to the official plat, which plat showed that the 1856 meander line lots did not abut the lake. Therefore, the 1875 Lands blocked the Clingers' patent from the lake. Under these circumstances, and under the clear terms of the patents themselves, the Clingers have no basis to claim title to the water's edge and to assert ownership of surveyed parcels which were never referenced in their patents.

The Clingers, however, argue that in 1887, their predecessors in interest received a deed for the patented land which stated, "also the tract of land adjoining the above described tract on the west and extending to Utah Lake." Since that deed, all landowners in the chain of title have received deeds stating that it was to the water's edge. However, a grantor of real property may not convey more than he owns. *Valley of Frederick v. Rowe*, 851 P.2d 267, 270 (Colo. App. 1993). The existence of an over-reaching deed in the Clingers' chain of title cannot form the basis of a claim to unpatented federal land. This court cannot recognize a deed purporting to cover additional lands never patented by the United States. The United States remains the owner of federal land until such time as a patent issues. *Deaton v. Gutierrez*, 89 P.3d 672, 675-76 (N.M. App. 2003). "[A] deed from a private individual conveying land owned by the United States is clearly ineffectual." *Id.* Unless the Clingers can demonstrate that the United States patented the disputed lands, which they have not, a subsequent deed from a private grantor purporting to affect that land cannot form the basis of a claim of title by the Clingers.

The Clingers also claim that the State's present motion is merely a disguised Motion for

Reconsideration of this court's September 17, 2001 summary judgment order and a new attempt to overturn the court's ruling quieting title in the landowners which should have been raised earlier. However, the court does not view the State's motion as an attempt to relitigate past issues or to circumvent the court's previous orders. The court has consistently stated that the Powell Slough would be dealt with separately. In addition, the court's previous order stated that title was quieted in the landowners or defendants in possession of the land. The State's motion with respect to the Powell Slough area of the lake asks the court to decide the identity of the rightful landowner. The United States and putative upland claimant cannot both be the owners of the land in question. Because the State must know the identity of the "landowner defendant" against whom it must litigate the boundary issue, the State has filed an appropriate motion for partial summary judgment on this issue.

The Clingers further argue that they have claims to the land between the meander lines based on historic possession and payment of taxes. The allegations concerning the use and possession of the 1875 Lands and payment of taxes on portions of those lands are not relevant to the determination of rightful title. Such evidence answers the question of where the boundary is located, but not the initial question of who the proper litigants are to the boundary dispute.

Moreover, to the extent that the Clingers assert that the 4481 Stipulation support a finding that the Clingers own an interest below its patented parcel, the State merely stipulated that property owners, including the Clingers, have an established usage down to the 4481 elevation. However, a stipulation as to usage does not equate to a stipulation regarding ownership of the subject lands.

In further support of its claim of use and possession, the Clingers rely on a stipulation entered into with the State during a 1962 state court case. In 1962, the Clingers and other

landowners brought an action against the State for interfering with their possessory rights to the property in the Fourth District Court of Utah County, State of Utah.  The case never went to trial because the parties entered into a stipulation agreeing to certain uses on the property as long as they remained open to the public.

However, in the 1962 case, the State did not acknowledge the Clingers' claims to the 1875 Lands and the stipulation merely states that the Clingers' predecessors in interest were issued a patent.  The Stipulation also makes clear that nothing in the Stipulation would bind or prejudice any party in any future case in which the boundary was litigated.  Therefore, the court does not find the prior case relevant to the title issues presented by the State's motion.

The Clingers further assert that, pursuant to the Color of Title Act, 43 U.S.C. § 1068, they would be entitled to apply for a patent for the land between their currently held patent and the lakefront.  The Clingers claim that they have not been able to pursue that patent based on the pendency of this action.  However, the Clingers could have, but have not, asserted a Color of Title Act claim in this lawsuit.  And, the Clingers provide no real explanation as to how the present suit has prevented them from applying for a patent under the Color of Title Act.  The Clingers admit that their root patent does not extend below the higher 1856 meander line.  The Clingers' ability to assert a Color of Title Act claim against the United States is merely speculative at this point. Therefore, the Color of Title Act does not provide a basis for rebutting the State's position.

The Clingers also argue that the State lacks standing to bring the present motion. The Clingers argue that the State's admission that the United States, and not the State, is the owner of the land between the two meander lines necessarily concedes that the State has no standing to dispute the Clingers' claims to that land.  However, such an argument mischaracterizes the State's position with respect to ownership of the lands between the meander lines.  The State has standing

8

to assert its claims to the sovereign lake-bed lands that transferred to it under the equal footing doctrine on the date of statehood.  Although the United States may have been the owner of un-patented lands between the two meander lines, that does not automatically make it the owner to sovereign lake-bed lands if such lands are eventually demonstrated to have been above the lowest meander line  at the time of statehood.  This court has previously ruled that the meander lines are not the proper boundary.  The State's dispute, therefore, with respect to the proper boundary for such lake-bed lands is with landowners whose lands abutted the lake at the time of statehood.

The Clingers further contend that in the past 126 years, the United States has not disputed the Clingers' use or possession of the land lakeward from the patented ground.  The Clingers argue that the State cannot assume the position of the United States on a non-existent dispute that would necessarily be between the United States and the private landowners who assert claims to that land.  However, this argument again misunderstands the State's position in the case.  The State's present motion deals only with determining who has the rightful title to the lake-abutting property in order to litigate the boundary with the correct party.  The court has not previously quieted title in the Clingers as against the United States.  The court quieted title in the landowners in possession of the land.  This motion seeks to determine the appropriate landowner.  Moreover, the court has always stated that Powell Slough would be dealt with at a later time.

The court concludes that the undisputed material facts warrant judgment as a matter of law:  The lands below the 1856 Meander Line were surveyed and platted in 1874-75 in connection with the creation of a new 1875 Meander Line; the patent under which the Clingers claim title was issued after the 1875 lands had been surveyed and platted on the official 1875 GLO Plat; and the Clingers root patent does not describe or purport to convey any of the 1875 Lands.  Based on these facts, the court concludes as a matter of law that the Clingers do not have title to lake-abutting

land because the United States owned parcels between the Clingers' patented parcel and the Lake

at the time the patent was conveyed.  Therefore, only the United States' un-patented lands are

subject to the State's claim to sovereign lake-bed lands as measured by the ultimate statehood use

and possession test.  Accordingly, the court grants the State's Motion for Partial Summary

Judgment.

### The Clingers' Motion to Strike Portions of Ratcliffe Affidavit

The Clingers seek to strike certain paragraphs in the Affidavit of Gary Ratcliffe, one of the

State's expert witnesses, for allegedly containing opinion, speculation, and conclusory statements

not based on personal knowledge in contradiction to the mandate in Rule 56(e) of the Federal

Rules of Civil Procedure.  The specific portions of the Ratcliffe Affidavit the Clingers seek to

strike include his understanding of GLO office procedures, his understanding that the GLO lot

numbers assigned in the original plats are still the same numbers attached to these parcels in the

current record in the Utah County Recorders Office, information that he obtained through a review

of the county records or any specific documents, and his opinion that the evidence indicates that

the GLO did not consider the lots abutting the 1856 meander line to be abutting the lake after

1875.

In the context of the State's motion for partial summary judgment against the Powell

Slough landowners, the Affidavit of Gary Ratcliffe is relevant only insofar as it serves to introduce

the 1856 and 1874 GLO plats and other maps attached as exhibits to the affidavit.  These maps are

certified copies of the official government survey plats and the Clingers do not dispute the content

or accuracy of these plats and maps.  The background and introductory statements made in the

Ratcliffe Affidavit are ultimately not necessary to the State's motion.  In any event, as a land

surveyor with twenty years of experience, Ratcliffe has personal knowledge of the basic methods

used by government surveyors and the basic units into which lands are subdivided.  Because the relevant portions of the Ratcliffe Affidavit merely introduce documentary evidence, which speaks for itself, the court concludes there is no need to strike those paragraphs.  Accordingly, the court denies the Clingers' motion to strike .

### United States' Motion for Partial Summary Judgment Against Landowner Defendants

The United States asks the court to dismiss the cross claim asserted against it by the Landowner Defendants claiming an interest in the Powell Slough.[1]  On October 15, 1999, the State filed its First Amended Complaint against the United States and the Landowner Defendants. On January 18, 2000, the Landowner Defendants answered the State's First Amended Complaint, filed a counterclaim against the State, and filed a cross-claim against the Untied States.  The Landowner Defendants' cross-claim includes two allegations and prayer for relief, as follows:

> 1.  The Defendant United States of America, and the named Departments and agents thereof (USA), have no right, title, or interest in any of the lands owned by Defendants which are listed by Tax Identification Number in Exhibit "A" attached hereto.

> 2.   Defendants are entitled to a decree quieting title in them and against the Defendant USA for each of their respective properties to the edge of the waters of Utah Lake at any given time.

> Wherefore, Defendants pray on their Cross-claim that a decree be entered in favor of each of them respectively, quieting title in them and against Defendant USA to their respective properties to the edge of the waters of Utah Lake at any given time.

The United States argues that the Landowner Defendants failed to plead their respective claims against the United States with the specificity required by the Quiet Title Act, 28 U.S.C. § 2409a, have failed to establish a waiver of the United States' sovereign immunity, and have failed

---

[1] These Landowner Defendants do not include the Clingers even though the Clingers own land in the Powell Slough.

to establish this Court's jurisdiction over their claims.

The Landowner Defendants contend that the United States' Answer failed to allege that the cross-claim was not pled with particularity or that there was a lack of jurisdiction.  However, the first defense in the United States' Answer states that the cross-claim fails to state a claim upon which relief can be made. It is well-established that the Quiet Title Act is the exclusive means by which adverse claimants may challenge the United States' title to real property.  Thus, the Answer adequately indicates that the Landowner Defendants have failed to state a claim under the Quiet Title Act.  It also covers whatever pleading or substantive deficiencies resulted in the failure.  In any event, a party's failure to state a claim and a lack of subject matter jurisdiction can both be raised at any time point during a lawsuit.  *See, e.g.*, *Fuel Safe Washington v. FERC*, 389 F.3d 1313, 1322 (10th Cir. 2004).  Moreover, the Landowner Defendants ignore that it is their burden to affirmatively set forth the court's jurisdiction.

By asking this court to quiet title in them to the water's edge, the Landowner Defendants have attempted to assert a claim under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which is the exclusive means by which adverse claimants may challenge the United States' title to real property.  *Block v. North Dakota*, 461 U.S. 273, 286 (1983).  Under the QTA, the United States consents to "be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).

In waiving sovereign immunity for quiet title actions, Congress also imposed specific requirements as conditions to the maintenance of such an action.  The QTA requires the complaint to "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title or interest claimed by the United States."  *Id.* § 2409a(d).  In *Washington County v. United States*, 903 F.

Supp. 40, 42 (D. Utah 1995), this court recognized that conclusory allegations similar to those contained in the Landowner Defendants' cross-claim were not sufficient.  The court found that the county's allegations that it was the "owner of the highway rights-of way shown on the map attached to its complaint and that it acquired its rights-of-way through public use, by County construction and maintenance of the rights-of-way or both" did not identify the county's interest in the property with particularity or describe with particularity the circumstances under which the property interest was acquired.  Therefore, the court dismissed the county's complaint for failure to comply with the requirements of 28 U.S.C. § 2409a.  903 F. Supp. at 42.

The Landowner Defendants assert that the State had already brought the action as a QTA case and, therefore, the United States had already waived its sovereign immunity.  However, they do not cite case law that would allow a party with a separate claim to use the jurisdiction established by another party.  Moreover, such an argument does not address the particularity requirements that a claim must meet under the QTA.  The Landowner Defendants' allegations are too vague to satisfy the requirements of the statute.  Neither of the allegations in the cross claim state the nature of the "right, title, or interest" or the "circumstances under which it was acquired." The cross-claim merely asserts that the United States has no right, title or interest in the lands of the Landowner Defendants.  Therefore, the Landowner Defendants' cross-claim fails to state a claim under the Quiet Title Act.

In this case, the government contends that the Landowner Defendants must also specifically allege facts demonstrating that their quiet title claims are within the jurisdictional 12-year statute of limitations, and they have not done so.  "Timeliness under subsection (f) is a jurisdictional prerequisite to suit under section 2409a." *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 452 (10th Cir. 1985).  The Landowner Defendants' cross-claim fails to set

forth any facts to establish that their respective claims are within the twelve-year statute of limitations.  Therefore, the cross-claim fails to establish a waiver of the United States' sovereign immunity and the jurisdiction of the court.

As an alternative basis for dismissal, the United States also argues that the Landowner Defendant's cross-claim should be dismissed because it fails to satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Rule 8(a) provides that a pleading shall contain a short and plain statement of the court's jurisdiction.  The party seeking to invoke the jurisdiction of a federal court bears the burden of affirmatively establishing the court's jurisdiction over the subject matter of the claims before any disposition of the action on the merits is attempted.  *Owen Equip. and Erection Co. v. Kroger*, 437 U.S. 365 (1978).  In an action against the United States, the party seeking to invoke the jurisdiction of the court must not only establish that the district court has subject matter jurisdiction over the claims, but that the United States has waived its sovereign immunity from suit for such claims pursuant to express congressional consent.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1979).  The cross-claim fails to satisfy this requirement because it does not demonstrate that the United States has waived sovereign immunity or that this court has subject matter jurisdiction over the Landowner Defendants' claims. Therefore, it fails to state a claim under Rule 8 of the Federal Rules of Civil Procedure.

The court concludes that the cross-claim is deficient under the QTA and Rule 8.  The cross-claim does not adequately state a claim under the Quiet Title Act, it does not demonstrate that this court has jurisdiction, and it does not demonstrate that the United States' has consented to be sued.  The Landowner Defendants made no attempt to make the requisite allegations in their cross-claim or in response to the United States' present motion.  Moreover, the Landowner Defendants did not ask for leave to amend their cross-claim in the event that the court found the

cross-claim deficient.  The court cannot allow the deficient cross-claim to stand as it is currently pled because it does not demonstrate that this court has jurisdiction.  Therefore, the court grants the United States' Motion for Partial Summary Judgment and dismisses the Landowner Defendant's cross-claim.  Because the motion deals only with a lack of jurisdiction and this court has not reached the merits of the cross-claim, the dismissal is without prejudice.

### CONCLUSION

Based on the above reasoning, the State's Motion for Partial Summary Judgment is GRANTED and the Clingers Family Partnership's Motion for Partial Summary Judgment is DENIED.  The State's Motion to Strike Clingers' Partial Summary Judgment Motion as Untimely is DENIED, and the Clingers Family Partnership's Motion to Strike Portions of the Ratcliffe Affidavit is DENIED. The United States' Motion for Partial Summary Judgment Against the Landowner Defendants is GRANTED.

DATED this 24th day of August, 2005.

DALE A. KIMBALL
United States District Judge