## Special Master's Second Report and Recommendation

On March 30, 2007, Hon. Dale Kimball accepted the Special Master's

Report and Recommendation which found that the State of Utah had "produced

overwhelming evidence that Defendant Landowners' predecessors-in-interest did

not use or possess their properties down to the 4481 level at statehood."[1]  (Doc.

648)  This finding established that the State had rebutted a prior stipulation

presuming such usage.  (Doc. 631, Report and Recommendation, at 2-4).[2]

At the August 1, 2006 hearing, Defendant Landowners relied on this

stipulation rather than furnish their own evidence of statehood usage and

possession.  Having presented extensive evidence of statehood era water levels and

supporting expert testimony, the State of Utah asked the Special Master to

establish a lake-wide boundary based on the current state of the record.  (*Id.*, at 19).

Despite the Defendant Landowners' failure to produce such evidence in response

to the Special Master's request (*Id.*, at 3 & 19) or at the hearing, the Special Master

---

[1] Doc. 631, Report and Recommendation, at 4
[2] Significantly, Defendant landowners have since conceded that the State of Utah has rebutted
the 4481 stipulation. (Transcript of Proceedings, Jan. 11, 2008, at 33, lines 17-18).  Nevertheless
they contend that Plaintiff State of Utah has merely repackaged evidence that *Jacobsen* and the
district court previously rejected (*cf.,* Doc. 715, at 13; Doc. 631, at 14)**.**  This is plainly not the
case.  Plaintiff's evidence consists of maps, water levels, photographic evidence and expert
testimony not previously presented to the district court.  (*Cf.* Doc. 631, at 6-13; *see also* Doc.
264, at 2-3, which, noting the limits of Rule 59(e), apparently denied Utah's motion for
reconsideration based on new evidence that Utah previously failed to submit**.).**

recommended that they "should have a final opportunity to present their case." (*Id.*, at 19)  The Report and Recommendation, however, said that the Defendant Landowners must "first show that they have something to present" by producing "*prima facie* proof of statehood title, usage, and possession." (*Id.*)  In effect, this required Defendant Landowners to produce evidence of their boundary sufficient to withstand summary judgment or directed verdict motions.[3] (*Id.*, at 21.)

Defendant Landowners submitted their evidence at various intervals from May 2007 through July 2008.[4]  In response, the State of Utah and Plaintiff Intervenors both contested the sufficiency of defendants' evidence and moved to strike their affidavits on grounds of relevance, hearsay, and lack of foundation.

Relevance

To establish a proper boundary for each parcel, the district court required the Defendant Landowners to proffer evidence of statehood era title, usage and possession. (Doc.  494, at 6 n. 1)  Because defendants' affidavits only prove usage

---

[3] The same standard governs motions for summary judgment and directed verdict.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

[4] During this interval, the parties received at least three extensions to file their submissions.

and possession from the late 1920's onward, [5] they do not satisfy the statehood era standard Judge Kimball imposed.   (Doc. 681, par. 5)

Defendant Landowners argue that their evidence is relevant because it permits an inference establishing comparable usage during the Statehood era. (Doc. 679, at 16)  But no such inference is possible because lake levels have fluctuated widely during the 112 years since Utah became a state,[6] and defendants have not adequately shown that they used their land for agricultural purposes when post statehood era water levels *and their own land elevations* were comparable to statehood era measurements.[7]  Moreover, to the extent that Defendant Landowners affidavits describe their predecessors-in-interest' land usage, they merely show such usage to the water's edge; this does not meet the Utah Supreme Court's test in *Provo City  v. Jacobsen*,[8]  as defendants' affidavits do not identify the level (or boundary) at which these lands were used for agricultural purposes during the

---

[5] *See, e.g*., Doc. 662 (par. 9-15 (1990-2001)); Doc. 663 (par. 5-17 (1953 to 1980's); Doc. 664 (par. 4-5 (1930's)); Doc. 668 (par. 6 (1992)); Doc. 669 (par. 5 (1935)); Doc. 671 (par.  2 (1956-2007)); Doc. 672 (par.  2) (1957 to 2007); Doc. 673 (par. 6 (late 1940's).  One affidavit identifies the remains of some structures that allegedly occupied land as early as 1856. (See Doc. 668).  But this evidence, which refers to an 1856 survey map, is also hearsay and, in any event, too uncertain to establish statehood era usage.  Similarly, evidence of two wells on the property lacks sufficient detail to help establish a statehood era boundary.  (*Id*.)

[6] *See* Doc. 359 (Riley affidavit (exhibits A (par. 6 & 8), B & D).

[7] The Simpson defendants have only supplied evidence of current elevations for land some of which they acknowledge is accretion property.  (Doc. 661, at 7 par. 23 (Simpson Defendants' Statement of Facts")).  But post-statehood era agricultural use of *accretion* land does not prove agricultural use and possession during the statehood era when such land was at a lower elevation.

[8] 176 P.2d 130, 132 (1947).

statehood era.[9]  Thus, these affidavits do not help establish the boundary of any

parcel.

<u>Hearsay and Lack of Foundation</u>

Defendant Landowners concede that their affidavits contain hearsay, but

argue that these statements fall within the Rule 807 residual exception.  This

exception, however, is not merely a catchall designed to admit any hearsay that

does not meet the strict requirements of more traditional hearsay exceptions.  The

legislative history to Rule 807 clearly demonstrates that Congress intended this

provision to be used with restraint on rare occasions when a statement contains

indicia of reliability comparable to other hearsay exceptions but fails to satisfy

their technical requirements.[10]  Since the Federal Rules of Evidence took effect in

1975, federal courts have adhered to this high threshold for admissibility.[11]

The proffered statements fall far short of this standard.  From a foundational

standpoint, most of the affidavits do not even identify who made the statement, the

---

[9] Agricultural use – as opposed to cattle grazing the water – is the proper reference point for determining boundary under the circumstances of this case. *Id.* At 132.  Although some of Defendant Landowners affidavits purport to identify specific water levels, they do not specify relevant (or sometimes even any) time periods.  *See, e.g.,* Doc. 670 (par. 5 (no time frame)); Doc. 675 (par. 7) (same); Doc. 672 (par. 4 (1961-62 and 1992)).

[10] 5 Weinstein's Federal Evidence sec. 807App.01[4][a], at 9 (Senate Judiciary Report both limited exception to "exceptional circumstances" and cautioned that "an overly broad residual hearsay  exception  could emasculate the hearsay rule or vitiate the rationale behind codification of the rules.")

[11] *See, e.g., U.S. v. Trujillo*, 136 F.3d 1388, 1395-96 (10th Cir. 1998) (used "very rarely and only in exceptional circumstances."); 5 Weinstein's Federal Evidence sec. 807.03[2][a], at 9 n. 3 (collecting cases allowing and excluding evidence)

circumstances under which and when the statement was made, or even the content of the statement; indeed it is not even possible to determine if the affidavits contain multiple levels of hearsay.[12]  These defects do not permit reliance on Rule 807 (the residual exception) because they preclude any determination of the statements' reliability.  Significantly, Defendant Landowners cite no decision admitting hearsay evidence under comparable circumstances.

No other hearsay exception applies to these statements.   Defendants initially argued that Rule 804(b)(4), which provides an exception for statements of personal or family history,  authorizes admissibility.  After further briefing, however, Defendant Landowners conceded the statements do not meet this exception.  (Doc. 753, at 2)

---

[12] *See* documents 668 (par.5); 669 (par. 8); 670 (par. 4); 671 (par. 4); 672 (par. 5); 673 (par. 8); 675 (par. 6); 675 (par. 8);  677 (par.4); 680 (par. 9); 686 (par. 8); 688 (par.9); 689 (par. 10); 690 (par. 6).  The preceding affidavits all couch their hearsay using slight variations of the following conclusory statement: "As far as I know personally, as far as I can determine, and as far as I have been informed by others . . . this land was used and possessed for farming and agricultural purposes at times in the past back to the time of statehood."  Framed in this fashion, the affidavits may be based on multiple levels of hearsay and offer no grounds for admissibility under FRE 805 (Hearsay within hearsay).  *See* also Doc. 664 (par. 14).

<u>Fairness and Other Considerations</u>

Defendant Landowners also imply the statements should be admissible because the State of Utah waited more than 100 years to bring this action.  (Doc. 719, at 2).  This delay arguably prejudiced defendants because they no longer have evidence available to make their case.  Putting aside that the Federal Rules of Evidence do not authorize admitting hearsay on this basis, there is no evidence that the State of Utah has acted in bad faith or intentionally delayed filing suit.[13]  The State apparently filed this case in response to former defendant Richard Davis' dredging actions on the lake. (Doc. 1, Complaint, at Par. 20).

Ultimately, however, no need exists to rule on these motions to strike because these affidavits do not carry enough evidentiary weight to establish Defendant Landowners' boundary at any level.  After the district court quieted title, Judge Kimball required Defendant Landowners to establish their boundary based upon statehood era usage and possession (Doc. 631, at 5 (citing previous district court order)).  As stated above, however, even considering defendants' affidavits in their entirety, they do not provide sufficient grounds for estimating – much less establishing -- a statehood era boundary.

---

[13] Indeed, the district court has noted that "[t]he State's ownership of the bed of Utah Lake was not confirmed until the United States Supreme Court's decision in Utah v. United States, 482 U.S. 193 (1987)."  (Doc. 243, at 2, Memorandum Opinion and Order).

The Simpson defendants argue that they have met this burden by linking their parcel to the Utah Supreme Court's decision in the *Jacobsen* cases.[14]  (Doc. 661, at 9).  Their efforts, however, are unavailing.  Despite the Special Master's request,[15] the *Jacobsen* trial transcripts have not been offered into evidence.[16]  Absent the complete trial record, there is insufficient evidence establishing the precise location, elevation, and lakeside boundary of any parcels involved in *Jacobsen*.  Nor do the Utah Supreme Court *Jacobsen* decisions provide this information,[17] and, even if they did, evidentiary detail contained in judicial decisions is generally inadmissible hearsay.[18]

Accordingly, despite numerous opportunities to submit evidence, Defendant Landowners have failed to make out a *prima facie* case.  The record simply does not contain sufficient evidence to permit a reasonable fact- finder to rule that any defendant has proven his boundary.  Defendant Landowners contend that they have made a showing comparable to that which the district court found adequate for the

---

[14] *Provo City v. Jacobsen*, 176 P.2d 130 (1947);  181 P.2d 213 (1947);  217 P.2d 577 (1950).

[15] (Transcript of Proceedings, Jan. 11, 2008, at 48-50).

[16] Defendants Simpson offered isolated excerpts from the record, but these were of limited probative value without the full trial context, and in any event do not add enough to make out a *prima facie* case.

[17] Defendant landowners concede that water level "wasn't the dispute in *Jacobsen*." ((Transcript of Proceedings, Jan. 11, 2008, at 50).  Their counsel also observed that "*Jacobsen* got settled.  They never got to that issue. . . .   And that's really the problem with *Jacobsen* is that the ultimate issue of where that line was never got resolved."  (*Id.*, at 51-52).  Although Attorney Fillerup made this statement when other counsel represented the Simpson defendants, Mr. Fillerup now represents all defendants.

[18] *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002), *vacated on other grounds* 128 S.Ct. 2161 (2008).

Davis parcels.   (Doc. 679, at 16-17)  The Davis parcel, however, is not within the Special Master's Order of Reference (Doc. 451), and this Report and Recommendation must be based upon the evidence presented concerning the remaining parcels at issue.[19]

Accordingly, this case should now proceed to its next stage: setting a boundary based on the evidence Plaintiff Utah has presented.  Although the ordinary high water mark at Statehood has long since been obliterated, the State of Utah has supplied circumstantial evidence from which this boundary may be inferred.  With this in mind, the next phase of this litigation will proceed as follows:

1.   The Special Master will conduct a hearing to set a lake-wide boundary based upon evidence the State of Utah has previously presented.  This lake-wide boundary will then be projected to establish the boundary for each parcel at issue in this case.

---

[19] In any event, the Special Master has reviewed the Davis submission accompanying Documents 176-177. However, the district court's ruling in Davis was largely based on the State of Utah's failure to provide proof of boundary at statehood.  (Doc. 243, at 12-13)  The State of Utah has since provided evidence to this effect.

2.  The Special Master will set such boundary in accordance with parameters the district court previously established (*i.e.,* the boundary must lie below the meander line and the 1885 compromise level).[20]

3.  Before setting such boundary, the Special Master will conduct a site visit of each parcel.

   /s/Michael Goldsmith

Michael Goldsmith

Special Master

Date:  December 15, 2008

---

[20] (Doc. 243, at 13, Memorandum Opinion and Order (deferring to *Jacobsen* "findings that the meander line and [1885] compromise level are higher than the ordinary high water mark at statehood.")).The district court set these broad parameters for determining the lake's boundary, despite the hearsay nature of the *Jacobsen* opinions.  Of course, in civil non-jury trials, courts often exercise discretion in considering hearsay on a discounted basis.  *See* Weinstein's Federal Evidence sec. 802.04[3][a] (2008) The hearsay rule is mainly concerned with the risk that jurors might give hearsay undue weight.  This danger is greatly reduced in bench trials conducted by an experienced trial judge.  *Id.*  That the *Jacobsen* cases may provide useful general parameters, however, does not mean they provide sufficient grounds to make out a *prima facie* case.