IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, by and through it DIVISION OF FORESTRY, FIRE AND STATE LANDS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF THE INTERIOR; BUREAU OF RECLAMATION; ELUID MARTINEZ, in his official capacity as Commissioner; BUREAU OF LAND MANAGEMENT; SALLY WISELY, in her capacity as Utah State Director, BLM; RICHARD W. DAVIS; JOHN DOE and MARY DOE; et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:97CV927DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on the Phase 2 process of projecting the Phase 1 lake-wide boundary elevation onto each remaining parcel in dispute. The parties have fully briefed the issue. On June 18, 2014, the court held a hearing on the Phase 2 process. At the hearing, the State of Utah was represented by Michael S. Johnson and the Landowner Defendants were represented by Robert C. Fillerup. The court took the matter under advisement. After carefully considering the law and facts relevant to the issue, the court issues the following Memorandum Decision and Order.

## BACKGROUND

After making several legal rulings in this matter, United States District Court Judge Dale A. Kimball referred the case to Special Master Michael Goldsmith pursuant to Rule 53(a)(1)(B) of the Federal Rules of Civil Procedure. The court's Order of Reference tasked the Special Master with taking evidence relevant to the boundary of each parcel of property in which the boundary is still in dispute, making findings as to the historic usage, title, and possession of each parcel, and issuing a report recommending the proper boundary for each of the parcels.

The Special Master laid out a two-phase procedure for addressing the issues in this case: Phase 1 involved the determination of a lake-wide boundary elevation based on evidence submitted by the parties; and Phase 2 involved projecting that lake-wide boundary onto each remaining parcel in dispute. On March 15, 2013, this court set the lake-wide boundary at the *lower* of (1) .2 feet below Compromise Elevation of 4488.95 or (2) the Meander Line. This court stated that the boundary shall be applied to all parcels that have not already agreed to a boundary through settlement. Therefore, Phase 2 remains to be determined. Phase 2 involves projecting the lake-wide boundary elevation onto the remaining parcels in dispute in order to establish the boundary on each parcel.

## DISCUSSION

In projecting the lake-wide boundary elevation onto each of the remaining parcels in dispute, the parties disagree as to whether the boundary is projected on the present-day location or where that boundary elevation would have been located in 1896. The Landowner Defendants claim that there have been substantial and dynamic shifts in the bed of Utah Lake over the last 120 years and presenting evidence of where the boundary would have been located at statehood

is an insurmountable obstacle. The State, however, argues that the mere assertion that the boundary contour on a particular parcel may have changed with the passage of time does not require the parties or the court to account for each potential change.

When courts are presented with evidence that a shoreline boundary has undergone changes, the court must analyze the mechanism for that change and the legal effect of that change. However, unless there is evidence of a known change in the shoreline of a particular parcel, no analysis of the mechanism of any potential change is necessary.

When a shoreline boundary changes through the slow, natural processes of accretion and erosion, the law recognizes that the boundary moves to follow such changes. *Baxter v .Utah Dept. Of Transp.*, 783 P.2d 1045, 1054 (Utah Ct. App. 1989). But when the movement of a shoreline boundary occurs through rapid avulsion, the legal boundary remains fixed and does not follow the changed shoreline. *Id.*

Absent proof to the contrary, changes in a shoreline are presumed to have resulted from the slow, natural processes of erosion and accretion. 78 Am. Jur. 2D Waters § 344. In *Murray v. State*, 596 P.2d 805, 814-15 (Kan. 1979), the court explained that the "weight of authority, both state and federal, appears to recognize a strong presumption, founded on long experience and observation," favoring "gradual erosion and accretion rather than avulsion." The *Murray* court held that the "one who claims that the change was by avulsion has the burden of showing the avulsion." *Id.*

In this case, there are no assertions that rapid avulsion ever occurred. Therefore, any evidence of a change in the shoreline boundaries presumptively occurred from erosion and accretion. The legal effect of this slow change is that the boundary changed as the contour

changed. Therefore, the court concludes that the parties should proceed to project the determined boundary on the remaining parcels as the land exists presently. If, during this process, the Landowner Defendants obtain evidence of any rapid avulsion on a given parcel, they can present such evidence to the court for review. However, mere speculation of changes over the years is not sufficient to require the State to project the boundary elevation on the land as it existed in 1896.

Dated this 15th day of September, 2014.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE