# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **STATE OF UTAH, by and through its DIVISION OF FORESTRY, FIRE & STATE LANDS,**<br><br>Plaintiff,<br><br>NATIONAL AUDUBON SOCIETY, et al.,<br><br>Intervenor-Plaintiffs,<br><br>vs.<br><br>**UNITED STATES OF AMERICA, et al.,**<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:97-CV-927-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff State of Utah's Motion to Enforce Order against Defendant Ridgeline Capital, L.C., pursuant to Rule 70 of the Federal Rules of Civil Procedure [ECF No. 962]. The State asks the court to enforce the court's March 15, 2013 Memorandum Decision and Order and its September 15, 2014 Memorandum Decision and Order against Defendant Ridgeline Capital, LC. In the 2013 Order, the court concluded that the lake-wide elevation for Utah Lake was the lower of (1) .2 feet below the compromise elevation of 4488.95 feet or (2) the Meander Line, and it shall be applied to all parcels that have not already agreed to a boundary through settlement. In the 2014 Order, the court ordered the parties to project the lake-wide boundary on the land as it presently exists. Since the court issued those

Orders, the State has projected the boundary on all remaining parcels around Utah Lake and entered settlements with all landowners except Defendant Ridgeline Capital.

Although Ridgeline agreed to a survey to project the boundary elevation on its parcel, the survey resulted in a boundary line farther from the lake than the parties had previously anticipated. Ridgeline initially believed there was a problem with the survey so the court granted Ridgeline time to conduct a competing survey. Ridgeline did not obtain a separate survey and does not now discount the State's survey. Ridgeline agrees that any additional survey would likely agree with the State's survey.

Ridgeline's new position is that the State led it to believe that the survey line would be close to the tentative settlement map the State submitted to it. But Ridgeline also concedes that both it and the State anticipated that the survey line would be close to the line indicated in settlement discussions. Therefore, there is no basis for a claim of fraudulent inducement and Ridgeline does not make such a claim. Ridgeline appears only to seek a court order that imposes the line that the parties' thought would be the line. But there is nothing in the record to support the imposition of that line as the boundary. Ridgeline does not dispute the accuracy of the survey, and the survey sets the proper boundary line in accordance with the court's prior rulings. Everything submitted to the court demonstrates that the parties knew that the actual line would come from the survey that was conducted. If there is no basis for disputing the accuracy of the survey, there is no basis for imposing a different boundary.

Any oral agreement that the survey line would probably be close to the discussed line is unenforceable and would be in violation of the statute of frauds. Utah's statute of frauds bars "enforcement of certain types of agreements that the law requires to be memorialized in writing." *Small v. Small*, 2024 UT App 173, ¶ 21, 561 P.3d 701 (cleaned up). "Estates and interests in real

property are types of agreements that fall under the statute of frauds and shall not be created, granted, assigned, surrendered or declared otherwise than by deed or conveyance in writing." *Id.* (cleaned up). "Any contract *conveying an interest in land* in which the agreement has not been reduced to writing and signed by the person relinquishing the property is unenforceable." *Id.* While the parties discussed tentative settlement lines for the property, these discussions are unenforceable under the statute of frauds.

Ridgeline also asserts that many of the prior boundary line settlements between the State and landowners were at a line approximating 1.5 feet below the statehood era compromise elevation and it believes that it would be fundamentally unfair to enforce a boundary line at an elevation different from the prior settlements. However, during settlement discussions in 2022, Ridgeline concedes it recognized that 1.5 feet below the statehood era compromise line would put the boundary way too far out because of the relatively flat area in Goshen Bay. It cannot now claim that it would be unfair to use 1.5 feet below statehood era compromise level as the proper boundary. There is nothing "unfair" with the .2 feet below compromise elevation—that is the elevation ordered by the court. Ridgeline has not offered any basis for setting the boundary at any other level. Ridgeline agreed to go forward on the proposed settlement subject to the State obtaining a survey, and on May 28, 2024, Ridgeline agreed to the State obtaining a survey.

The State asks the court to apply Rule 70 of the Federal Rules of Civil Procedure and enter a judgment divesting Ridgeline's title to lands below the survey's projection of .2 feet below compromise elevation. Under Rule 70(a), if a court order or judgment "requires a party to convey land, to deliver a deed . . . or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done." Fed. R. Civ. P. 70(a). Under Rule 70(b), "[i]f the real . . . property is within the district, the court—instead of ordering

a conveyance—may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance." *Id.* 70(b).

The parties have worked on a stipulated boundary projection for two years and reached a tentative settlement in May 2024. Although a dispute arose after the State sent Ridgeline Capital the survey results on August 23, 2024, Ridgeline Capital agreed to a survey, did not question the surveyor's credentials before the results were disclosed, and have advanced no arguments as to why the surveyor was wrong. Ridgeline has had every opportunity to dispute the survey and agrees that there is no basis for disputing it. The court's January 16, 2025 Order stated that "[i]f the two surveys do not differ significantly and the parties can reach an agreement on the projection of the boundary on Ridgeline Capital's parcel, the parties shall file a stipulation with the court as to the boundary location by March 28, 2025." The Order further stated that "[i]f the parties do not comply with the above deadlines, the court will consider application of Rule 70 at a future date."

Ridgeline has not provided any valid basis for rejecting the survey results. Given that any oral agreement would be invalid under the statute of frauds, the court finds that an evidentiary hearing is unnecessary. The court concludes that, at this time, it is appropriate to apply Rule 70 and bring closure to the ongoing dispute. The court has given Ridgeline ample time to present its position and/or reach a boundary line through a settlement with the State. The court, therefore, GRANTS the State's Motion to Enforce Order [ECF No. 962].  The court divests Ridgeline of its interest in Utah Lake sovereign lands lakeward or below .2 feet below the statehood era compromise elevation, as described in the surveyed legal description included with the State's motion.  The State shall submit a Judgment for the court to enter within twenty days of the date of this Order.

DATED this 8th day of July 2025.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL
United States District Judge